1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10
11   ORLANDO LEROY TILFORD,            CASE NO. 12cv2507-GPC (MDD)
12                       Plaintiff,    REPORT AND
                                       RECOMMENDATION RE:
         vs.                           DEFENDANTS' MOTION FOR
13                                     SUMMARY JUDGMENT
14   J. CHAU, et al.,                  [ECF No. 22]
15                       Defendants.
16

**I.   Introduction**

      This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rules 72.1 and 72.3(f) of the United States District Court for the Southern District of California.  For the reasons set forth herein, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED**.

**II.   Procedural History**

      On October 15, 2012, Plaintiff Orlando Leroy Tilford, an inmate housed at the Donovan Correctional facility proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  In his Complaint, Plaintiff contends that his Eighth Amendment

rights were violated when prison officials discontinued his morphine prescription.  (*Id.* at 2-3.)  Plaintiff also contends that his due process rights were violated because his medication was discontinued without a fair hearing.  (*Id.* at 5.)  On March 11, 2013, Defendants J. Chau, M.D. and R. Walker, D.O. ("Defendants") filed an Answer to Plaintiff's Complaint.  (ECF No. 10.)

On October 10, 2013, Defendants filed the instant Motion for Summary Judgment ("MSJ").  (ECF No. 22.)  On November 7, 2013, this Court issued a briefing schedule on Defendants' Motion and provided Plaintiff notice pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).[1] Plaintiff filed a request for an extension to file his Response to Defendants' Motion on December 13, 2013.  (ECF No. 25.)  On December 23, 2013, the Court granted Plaintiff's request for an extension, giving Plaintiff until January 24, 2014, to file his Response.  (ECF No. 27.) Plaintiff failed to file a Response and has not filed a request for an extension.

**III.   Statement of Facts**

Plaintiff is an inmate housed in the Donovan Correctional Facility. Defendant J. Chau, M.D., is a physician employed at Donovan who served as Plaintiff's primary care physician.  (ECF No. 22-4 (Declaration of J. Chau, M.D.) at ¶ 4; ECF No. 22-5 (Plaintiff' Medical Records from Donovon Correctional Facility) at 102.)  On November 21, 2011, Dr. Chau examined Plaintiff and noted a principle diagnosis of HIV and avascular necrosis of the hips and knees.  (ECF No. 22-5 at 102.)  Based on his observations and on the recommendation of Plaintiff's Orthopedist, Dr.

---

[1]Defendants also provided Plaintiff with *Klingele/Rand* notices in their MSJ.  (ECF No. 22-6.)

Bentley at Tri-City Hospital, Dr. Chau ordered MRIs of Plaintiff's knees and hips.  (*Id.*)  The MRIs were performed on January 4, 2012.  (*Id.* at 106-111.)

On January 10, 2012, Dr. Chau had a follow-up examination with Plaintiff and reported the results of his prior exam and the MRIs.  (*Id.* at 103.)  Dr. Chau diagnosed Plaintiff with HIV, avascular necrosis (a death of bone tissue) in both hips and knees, and chronic pain stemming from his avascular necrosis.  (*Id.*)  Dr. Chau reported that Plaintiff was taking several medications, including morphine for treatment of pain.  (*Id.*)  Dr. Chau noted that Plaintiff exhibited a mild limp, but appeared to be ambulatory without the use of a cane and was in no apparent distress, though he did note other damage to Plaintiff's knees.  (*Id.*)  Dr. Chau ordered that Plaintiff's current medications be continued, including his morphine, and noted that Plaintiff was scheduled for an appointment with a hematologist to determine whether Plaintiff's avascular necrosis was due to a hematological etiology.  (*Id.*)  Dr. Chau discussed with Plaintiff the importance of adhering to his medication.  (*Id.*)

Plaintiff saw Dr. Wilkinson, a hematologist, on February 24, 2012.  (*Id.* at 97-101.)  Dr. Wilkinson ordered additional testing to determine the cause of Plaintiff's avascular necrosis, but otherwise agreed with the evaluation of Plaintiff's doctors at Donovan.  (*Id.* at 100.)  On February 28, 2012, Dr. Chau met with Plaintiff again for a follow-up visit.  (ECF No. 22-4 at ¶ 7; ECF No. 22-5 at 94-95.)  Dr. Chau once again ordered that Plaintiff's HIV treatment and medications be continued, and discussed with Plaintiff the importance of adherence to his medication.  (ECF No. 22-5 at 94.)  Dr. Chau also entered orders for the tests recommended by Dr. Wilkinson and for Plaintiff to receive Pnemovax and Tdap vaccinations.  (*Id.* at 92-96.)

1       On March 1, 2012, samples were collected from Plaintiff for the

2   tests recommended by Dr. Wilkinson.  (*Id.* at 87-91.)  On March 8, 2012,

3   additional samples were collected for a Factor V (Leiden) Mutation

4   Analysis.  (*Id.* at 83.)  On March 28, 2012, Plaintiff had another

5   consultation with Dr. Wilkinson.  (*Id.* at 81-85.)  Dr. Wilkinson

6   recommended that Plaintiff be placed on bisphosphonates and

7   recommended that a prothrombin gene mutation study be performed.

8   (*Id.* at 83-84.)  Dr. Chau placed the order for the gene mutation study on

9   April 6, 2012.  (ECF No. 22-4 at ¶ 11; ECF No. 22-5 at 80.)

10       On April 10, 2012, blood and urine samples were collected from

11   Plaintiff for the purpose of determining if Plaintiff was compliant with

12   his medication.  (ECF No. 22-5 at 77, 79.)  On April 11, 2012, before the

13   results of those tests were published, Dr. Chau conducted another follow-

14   up visit with Plaintiff.  (*Id.* at 115.)  Dr. Chau discussed Plaintiff's

15   placement on bisphosphonate treatment and entered a prescription for

16   Fosamax.  (*Id.*)  Dr. Chau also began treating Plaintiff for possible

17   allergic rhinitis and placed Plaintiff on Claritin.  (*Id.* at 75-76.)  Dr. Chau

18   informed Plaintiff that if he was diverting his medication[2] or not

19   complying with the Pain Management Contract Plaintiff signed on March

20   12, 2010, his medication would be stopped.  (*Id.* at 75, 112-113.)

21       On April 12, 2012, the results of Plaintiff's urine sample were

22   reported.  (*Id.* at 77.)  Plaintiff's specimen contained a 7098 ng/ml

23   concentration of morphine, but was negative for hydromorphone.  (*Id.*)

24   Dr. Chau believed that the absence of hydromorphone suggested that

25   Plaintiff was not taking his medication.  (ECF No. 22-4 at ¶ 14.)  On

26   April 15, 2012, Plaintiff's blood test results were reported.  (ECF No. 22-5

27

28       [2]"Diverting" medication refers to a patient not taking his medication as directed, typically for an improper purpose, such as selling or trading the drugs or taking an improper dosage.

at 79.)  The test indicated Plaintiff was not taking his morphine medication.  (*Id.*)  Dr. Chau viewed this as confirmation that Plaintiff was diverting his medication. (ECF No. 22-4 at ¶ 14.)  Dr. Chau believed this to be in violation of paragraph 15(b) of Plaintiff's Narcotic Pain Medication Contract.  (*Id.* at ¶ 15.)  Dr. Chau also believed the unaccounted for medication to be a security risk for the prison.  (*Id.* at ¶ 16.)

On April 19, 2012, the results of Plaintiff's Gene Mutation study were reported.  (ECF No. 22-5 at 73-74.)  On April 20, 2012, Dr. Chau ordered a follow-up visit with Dr. Wilkinson for Plaintiff to review the results of the Gene Mutation study.  (*Id.* at 72.)  On May 8, 2012, Dr. Chau met with Plaintiff again.  (*Id.* at 68-69.)  His notes reflect that Plaintiff entered the clinic without a walking assistive device and that Plaintiff stated he does not always use a cane.  (*Id.* at 68-69.)  Dr. Chau's notes also reflect his assessment that Plaintiff may be diverting his medication based on the laboratory finding that Plaintiff was negative for hydromorphone.  (*Id.* at 69.)  Dr. Chau informed Plaintiff that the case would be referred to the Pain Management Committee and that Plaintiff may be switched to alternative medication in the future.  (*Id.*) Additionally, Plaintiff was given a wrist splint and an accommodation chrono to treat his reported left thumb pain.  (*Id.*)  Defendant Dr. Walker approved the requests for the wrist splint and the accommodation chrono.  (*Id.* at 70.)

On May 11, 2012, the Pain Management Committee met and evaluated the evidence presented by Dr. Chau that Plaintiff was diverting his medication.  (ECF No. 22-4 at ¶ 24; ECF No. 22-5 at 100.) Dr. Walker was present and heard the evidence presented by Dr. Chau. (ECF No. 22-4, Ex. C.)  The Committee determined that Plaintiff was not

1  taking his medication as directed, and recommended that Plaintiff be
2  tapered off the medication.  (*Id.*)  The Committee also scheduled follow-
3  ups for Plaintiff with orthopedics and for anti-viral medication
4  management in the CID clinic, and recommended that Plaintiff remain
5  on Ibuprofen.  (*Id.*)

6       On May 14, 2012, more blood samples were taken from Plaintiff.
7  Also on May 14, 2012, Dr. Chau ordered follow-up visits for Plaintiff with
8  an orthopedic specialist and with a hematologist.  (*Id.* at 60-62, 66.)  On
9  May 21, 2012, Dr. Chau, in accordance with the findings of the Pain
10 Management Committee, ordered that Plaintiff be tapered off morphine
11 sulfate over a period of twenty days.  (*Id.* at 58-59.)  On May 22, 2012,
12 another specimen was taken from Plaintiff for further gene analysis.  (*Id.*
13 at 57.)

14      On June 12, 2012, Dr. Chau conducted another follow-up visit with
15 Plaintiff.  (*Id.* at 55.)  During his visit, Plaintiff complained of severe pain
16 since being taken off morphine.  (*Id.*)  Plaintiff complained that the pain
17 was so bad that he could not eat, though Dr. Chau noted that Plaintiff's
18 weight had not changed.  (*Id.*)  Plaintiff used a cane, but Dr. Chau
19 observed no significant limping and did not believe that Plaintiff was in
20 apparent distress.  (*Id.*)  Nevertheless, Dr. Chau ordered that Plaintiff's
21 Ibuprofen be increased in light of Plaintiff's complaints of pain.  (*Id.*)

22      On June 18, 2012, Plaintiff had a telephonic orthopedic consultation
23 with Dr. Christian Bentley.  Based on Dr. Bentley's recommendation, Dr.
24 Chau ordered MRIs of Plaintiff's left wrist and elbow.  (*Id.* at 52.)  The
25 scans were performed on July 6, 2012.  (*Id.* at 48-49.)

26      In Response to the Pain Management Committee's decision to
27 discontinue Plaintiff's morphine medication, Plaintiff filed a 602
28 Administrative Appeal.  On July 16, 2012, Dr. Chau interviewed Plaintiff

1  regarding his Appeal. (*Id.* at 47.) According to Dr. Chau, Plaintiff

2  contended that the Committee's decision was invalid because the testing

3  showed that Plaintiff had morphine in his system and because Plaintiff

4  was never found to have sold or traded his medication. (*Id.*) Plaintiff

5  also stressed that he needed the morphine to treat his pain. (*Id.*) That

6  same day, Dr. Chau put in a recommendation for Plaintiff to receive knee

7  braces and a double mattress to help alleviate Plaintiff's complaints of

8  pain. (ECF No. 22-5 at 46.) On July 25, 2012, Plaintiff had another

9  consultation with Dr. Wilkinson. (*Id.* at 42-45.)

10  On July 30, 2012, Dr. Chau issued his response denying Plaintiff's

11  602 Appeal. (ECF No. 22-4, Ex. D.) Dr. Chau denied the Appeal based

12  on the findings that Plaintiff's previously reported morphine levels were

13  inconsistent with the high dose of medication Plaintiff was supposed to

14  be taking and that Plaintiff's signs and symptoms were inconsistent with

15  Plaintiff's claims of disability and severe pain. (*Id.*) Dr. Chau's response

16  was reviewed by Dr. Walker. (*Id.*) Dr. Walker concurred with Dr. Chau's

17  opinion, finding the laboratory reports of Plaintiff's morphine levels

18  highly significant. (ECF No. 22-3, Ex. B.) Accordingly, Dr. Walker

19  denied Plaintiff's Appeal. (*Id.*) Dr. Walker also found that based on Dr.

20  Chau's findings regarding Plaintiff's functionality, Plaintiff no longer

21  needed morphine treatment and his pain could be managed with other

22  medication. (*Id.*)

23  On August 10, 2012, Dr. Chau interviewed Plaintiff regarding a

24  second 602 Appeal over Plaintiff's morphine medication. (*Id.* at 39.)

25  Plaintiff contended that the discontinuation of his morphine medication

26  left him in severe pain, and constituted deliberate indifference to his

27  medical needs in violation of his Eighth Amendment rights. (*Id.*) In

28  addition to reinstatement of his morphine, Plaintiff requested $10,000

per day from each individual involved in the decision to terminate his morphine medication until the prescription is reinstated.  (*Id.*)  He also asked that he not be harassed by prison officials based on his Appeal.

In his Response to Plaintiff's Appeal, Dr. Chau granted Plaintiff's request not be harassed, but denied Plaintiff's request for monetary compensation as beyond the scope of a 602 appeal.  (ECF No. 22-4, Ex. E.)  Dr. Chau noted that Plaintiff had been treated like any other inmate, was receiving adequate care, and had been observed moving about without distress.  (*Id.*)  Dr. Walker reviewed the Appeal and concurred with Dr. Chau's analysis and decision.  (*Id.*)

On August 10, 2012, Dr. Chau supplemented Plaintiff's pain medication with a 90-day prescription for Tylenol.  (ECF No. 22-5 at 40.)  On October 12, 2012, Dr. Chau conducted another visit with Plaintiff.  (*Id.* at 33-35.)  Dr. Chau ordered more laboratory testing, updated Plaintiff's accommodation chrono, recommended another orthopedic consultation, and renewed Plaintiff's HIV medications.  (*Id.* at 33-37.)

On December 7, 2012, Dr. Chau conducted another visit with Plaintiff.  (*Id.* at 29-31.)  Dr. Chau examined Plaintiff and determined that Plaintiff's condition did not warrant reinstatement of narcotic pain medication.  (ECF No. 22-4 at ¶ 47; ECF No. 22-5 at 29.)  Plaintiff was scheduled for another orthopedic follow-up, another follow-up in the Public Health Clinic, and his Ibuprofen prescription was renewed.  (ECF No. 22-4 at ¶ 47.)

On December 20, 2012, Dr. Chau entered an order for Plaintiff to receive an offsite orthopedic consultation and x-rays of his hips and knees.  (ECF No. 22-5 at 27.)  The tests were performed the next day and found that Plaintiff had "minimal osteoarthritic changes [of the] right hip.  No acute bony pathology."  (*Id.* at 26.)  According to Dr. Chau, these

1   findings supported his conclusion that Plaintiff did not need narcotic pain
2   medication.  (ECF No. 22-4 at ¶ 48.)  On December 26, 2012, Plaintiff
3   received an orthopedic consultation with Dr. Chadha.  (ECF No. 22-5 at
4   22.)  Dr. Chadha reported that Plaintiff had minimal loss of motion, and
5   though Plaintiff was experiencing pain, Dr. Chadha did not recommend
6   surgery or narcotic pain medication.  (*Id.* at 21.)  Dr. Chau reviewed the
7   report on December 28, 2012, and believed it confirmed his assessment
8   that non-steroidal anti-inflammatory medications were appropriate and
9   that narcotics should not be used.  (ECF No. 22-4 at ¶ 49; ECF No. 22-5
10  at 32.)

11       On January 4, 2013, Dr. Chau saw Plaintiff again.  (ECF No. 22-4
12  at 18.)  Dr. Chau recommended that Plaintiff's Ibuprofen be continued
13  and that Plaintiff receive Neurontin as recommended by Dr. Chadha.
14  (*Id.*)  Dr. Chau placed the order for Neurontin along with a
15  Nonformulatory Drug Request, but the request was denied by Dr. Seeley
16  on January 8, 2013, on the grounds that formulatory medications would
17  have to be tried before Neurontin.  (*Id.* at 17-18.)

18       Plaintiff filed a health care appeal regarding the denial of
19  Neurontin.  (*Id.* at 16.)  On February 13, 2013, Dr. Chau interviewed
20  Plaintiff for the first level response to Plaintiff's healthcare appeal.  Dr.
21  Chau recommended that Plaintiff instead take Amitriptyline, which also
22  had a sedative effect that Dr. Chau believed would help Plaintiff with his
23  difficulty sleeping.  (*Id.* at 15.)

24       On February 20, 2013, a multi-disciplinary meeting was held to
25  discuss Plaintiff's medical conditions.  (*Id.* at 14.)  Several medical
26  professionals, including Dr. Chau, attended.  (*Id.*)  According to Dr. Chau,
27  all medical professionals present agreed that Plaintiff did not exhibit
28  difficulty with his daily activities.  (ECF No. 22-4 at ¶ 52.)  They noted

that Plaintiff was able to occasionally walk without his cane, and had
come to the pill line without his cane, though he refused to take
Amitriptyline.  (*Id.*)  Mental health professionals noted that Plaintiff ate
and slept well, and had only minor depression which was caused at least
in part by the relocation of his cellmate to another facility.  (*Id.*)
Ultimately, the panel concluded that Plaintiff should remain on
Ibuprofen and Amitriptyline for pain.  (ECF No. 22-5 at 14.)

## IV.   Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the
granting of  summary judgment "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."  The
standard for granting a motion for summary judgment is essentially the
same as for the granting of a directed verdict.  Judgment must be
entered, "if, under the governing law, there can be but one reasonable
conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 250-51 (1986).  "If reasonable minds could differ," however,
judgment should not be entered in favor of the moving party.  *Id.*

The parties bear the same substantive burden of proof as would
apply at a trial on the merits, including plaintiff's burden to establish any
element essential to his case.  *Id.* at 252; *Celotex v. Catrett*, 477 U.S. 317,
322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The
moving party bears the initial burden of identifying the elements of the
claim in the pleadings, or other evidence, which the moving party
"believes demonstrates the absence of a genuine issue of material fact."
*Celotex*, 477 U.S. at 323.  "A material issue of fact is one that affects the
outcome of the litigation and requires a trial to resolve the parties'

differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff's favor, could convince a reasonable jury to find for the plaintiff." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249) (modified to reflect a single plaintiff).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417 (9th Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the moving papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "No valid interest is served by withholding summary judgment on a complaint that

wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989).

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988); *see also* 42 U.S.C. § 1983. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633.

**V.   Analysis**

Plaintiff's Complaint contains three counts. In counts one and two, Plaintiff contends he was denied his right to medical care and subjected to cruel and unusual punishment in violation of the Eighth Amendment when his morphine medication was discontinued. (ECF No. 1 at 3-4.) In count three, Plaintiff contends he was denied his right to due process when the Pain Management Committee determined that Plaintiff was diverting his pain medication without providing Plaintiff a full and fair hearing on the issue. (*Id*. at 5.) In the instant Motion, Defendants contend that all claims fail as the uncontested evidence shows that Defendants actively treated Plaintiff's medical conditions and because Plaintiff was not entitled to a hearing regarding his morphine

medication.  (ECF No. 22-2.)

### 1.    Deliberately Indifference (Counts 1 and 2)

Defendants contend that Plaintiff's Eighth Amendment claim fails because Plaintiff's disagreement with the decision to terminate his morphine prescription does not constitute deliberate indifference to Plaintiff's serious medical needs.  (ECF No. 22-1 at 25.)  In his Complaint, Plaintiff states that he suffers chronic pain as a result of his avascular necrosis and that his morphine medication was prescribed to him by his doctors.  (ECF No. 1 at 3.)  Plaintiff contends that Defendants exhibited deliberate indifference to his medical needs when they discontinued his medication despite their knowledge of his serious medical condition.  (*Id.*)

The Eighth Amendment is violated when prison officials demonstrate "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  A deliberate indifference claim has both an objective and subjective component: a prisoner must allege he was confined under conditions posing a risk of 'objectively, sufficiently serious' harm," and "the officials had a "sufficiently culpable state of mind'" in denying the proper medical care." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Wallis v. Baldwind*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted)).

Thus, in order to avoid summary judgment, Plaintiff must first point to evidence in the record which shows an objectively "serious" medical need, i.e. the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*); *Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (*en banc*); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

To avoid summary judgment, the evidence must demonstrate a triable issue of material fact regarding the subjective component of an Eighth Amendment violation.   "Deliberate indifference is evidenced only when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clement*, 298 F.3d at 904 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Thus, the indifference must be both deliberate and substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106, *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  "This is not an easy test for [the] Plaintiff] to satisfy[.]" *Hallet v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002).  Nonetheless, deliberate indifference may be found if Defendants "deny, delay, or intentionally interfere with [a prisoner's serious need for] medical treatment." *Id.* (internal citations omitted).

It is not enough that the plaintiff merely disagree with the course of treatment provided. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  A difference in medical opinion is "insufficient, as a matter of law, to establish deliberate indifference." *Id.* (citing *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996).  In order to prevail on a claim involving defendants' choices between alternative courses of treatment, a prisoner must show that the chosen treatment "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an

1  excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332.  In other

2  words, so long as a defendant decides on a medically acceptable course of

3  treatment, his actions will not be considered deliberately indifferent even

4  if an alternative course of treatment was available.  *Id.*

5      In *Toguchi*, for example, the plaintiff contended that the doctor's

6  choice of medication was improper because another available drug was

7  superior.  *Toguchi*, 391 F.3d at 1058.  The court rejected the claim

8  because the plaintiff had not explained how the prescribed drug was

9  chosen in conscious disregard of his health.  *Id.*  Conversely, in *Jackson*,

10  the court denied summary judgment for the defendants where plaintiff

11  alleged that the defendants' decision to deny him a kidney transplant

12  was not a medical decision, but rather a decision made out of personal

13  animosity to the plaintiff.  *Jackson*, 90 F.3d at 332.

14      Here, there is no dispute that Plaintiff's avasular necrosis and pain

15  constitute a serious medical need.  Accordingly, the only remaining

16  question is whether Defendants were deliberately indifferent to that

17  need.  *Estelle*, 429 U.S. at 104.  Defendants' discontinuation of Plaintiff's

18  morphine medication does not constitute deliberate indifference.

19  Defendants have provided considerable evidence to show that the

20  decision to remove Plaintiff from morphine was a considered and

21  reasoned decision made by a panel of medical professionals.  Those

22  professionals determined that Plaintiff was not taking his morphine

23  properly and that alternative treatments were sufficient to treat

24  Plaintiff's condition.  Plaintiff was observed continuously before and after

25  his morphine was discontinued and all medical professionals involved in

26  Plaintiff's care agreed that Plaintiff's pain was being well-managed with

27  non-narcotic medication.

28      Defendants provide Plaintiff's medical records to support their

claims.  (ECF No. 22-5.)  Those records are authenticated by the custodian of medical records for Donovan Correctional Facility (*See* Declaration of Douglas Baxter, ECF No. 22-5.)  Many of the treatment notes contained in Plaintiff's medical record were written by Dr. Chau, who provided his sworn declaration attesting to the accuracy of those notes.  (Declaration of J. Chau, M.D., ECF No. 22-4.)  According to Plaintiff's medical records, the decision to remove him from morphine was based on the professional medical judgment of those involved in the decision, many of whom are not defendants in this action.  (*Id.*)  Dr. Walker provided a similar assessment in his sworn declaration.  (ECF No. 22-3.)

There is also considerable evidence that Plaintiff was not taking his morphine medication as prescribed.  Blood and urine tests performed on April 10, 2012, showed that Plaintiff was negative for hydromorphone.  (ECF No. 22-5 at 77,79.)  According to his sworn declaration, Dr. Chau believed this result indicated that Plaintiff was not taking his medication.  (ECF No. 22-4 at ¶ 14.)  The Pain Management Committee concurred with Dr. Chau that Plaintiff was not taking his morphine as prescribed which presented a security risk for the prison and a health risk for Plaintiff.  (*Id.* at ¶ 24; ECF no. 22-5 at 100.)  Plaintiff has introduced no evidence to contradict the objective laboratory findings showing that he did not have hydromorphone in his system or to show that the Defendants' decision was based on anything other than their medical judgment.

Thus, because Defendants reasonably believed, based on objective medical testing, other medical opinions, and their own professional judgment, that Plaintiff was not taking morphine as directed and thus receiving a negligible benefit from it, they did not exhibit deliberate

1   indifference in switching Plaintiff to a non-narcotic painkiller.  This is
2   especially true in light of the fact that Defendants took efforts to taper
3   Plaintiff off his morphine, to replace the morphine with other painkillers
4   that they believed would effectively treat Plaintiff's chronic pain, and
5   continuously met with and observed Plaintiff after his morphine was
6   stopped to ensure that Plaintiff was functioning well without the narcotic
7   prescription.  (ECF No. 22-5 at 55 [June 12, 2012, treatment notes noting
8   that Plaintiff was not losing weight, despite claims that pain prevented
9   him from eating, and that Plaintiff was able to move without apparent
10  distress]; ECF No. 22-5 at 29-31 [December 7, 2012, treatment notes
11  describing Dr. Chau's assessment that Plaintiff was managing well on
12  non-narcotic medication];  ECF No. 22-4 at ¶ 48 [Dr. Chau's assessment
13  that, based on x-rays taken on December 21, 2012, Plaintiff's condition
14  did not warrant narcotic medication];  ECF No. 22-5 at 21-22 [December
15  26, 2012, treatment notes from Dr. Chadha recommending non-steroidal
16  anti-inflammatory medications to treat Plaintiff].)

17          Defendants continued to adjust Plaintiff's non-narcotic medication
18  to ensure that Plaintiff's pain was being effectively managed.  (*Id.* at 15,
19  40, 55.)  Defendants also took other steps, including ordering Plaintiff a
20  special mattress, to further alleviate Plaintiff's pain.  (*Id.* at 46.)
21  Further, on February 20, 2013, a multi-disciplinary meeting was held to
22  discuss Plaintiff's medical conditions.  (*Id.* at 14.)  Several medical
23  professionals, including Dr. Chau, attended.  (*Id.*)  According to Dr. Chau,
24  all medical professionals present agreed that Plaintiff did not exhibit
25  difficulty with his daily activities.  (ECF No. 22-4 at ¶ 52.)  They noted
26  that Plaintiff was able to occasionally walk without his cane, had come to
27  the pill line without his cane, and had refused to take his prescribed
28  Amitriptyline.  (*Id.*)  Mental health professionals noted that Plaintiff ate

and slept well, and had only minor depression which was caused at least in part by the relocation of his cellmate to another facility.  (*Id.*) Ultimately, the panel concluded that Plaintiff should remain on Ibuprofen and Amitriptyline for pain and that morphine was unnecessary.  (ECF No. 22-5 at 14.)

This falls far short of the high bar required for a showing of deliberate indifference.  *Estelle*, 429 U.S. at 104.  Plaintiff has submitted no evidence showing that Defendants delayed, denied, or interfered with treatment.  *Hallet*, 296 F.3d at 745.  Rather, the evidence shows that Defendants actively and continuously treated Plaintiff, taking considerable efforts to ensure that Plaintiff's pain was being managed and that his underlying conditions were being treated.  Defendants consulted with other medical professionals who observed Plaintiff and considered his medical records, and determined that Plaintiff was being effectively treated without morphine.  Plaintiff's preference for other medication and his subjective complaints of pain are insufficient to overcome this evidence and do not preclude summary judgment. *Toguchi*, 391 F.3d at 1058.

Accordingly, Plaintiff has failed to show that Defendants were deliberately indifferent to his medical needs, and his claim fails as a matter of law.  The Court **RECOMMENDS** that Defendants' Motion be **GRANTED** as to counts one and two of Plaintiff's Complaint.

### 2.    Due Process (Count 3)

Plaintiff also contends that Defendants violated his due process rights when they discontinued his morphine medication without providing him with a full and fair hearing.  (ECF No. 1 at 5.)  Plaintiff states that he signed a Narcotic Pain Medication Agreement and adhered to its terms.  (*Id.*)  He states he never took any non-prescribed drugs and

that testing showed he had the morphine in his system. (*Id.*)  Finally, he notes that he was never found to have sold or traded his medications to other inmates. (*Id.*)  In their Motion, Defendants contend that Plaintiff was not entitled to a hearing regarding his morphine medication and therefore his due process rights were not violated. (ECF No. 22-2 at 27-28.)

"The Due Process Clause of the Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law." *Thompson v. Souza*, 111 F.3d 694, 701(9th Cir. 1997) (internal citations omitted).  "The Fourteenth Amendment prohibits prison officials from treating prisoners in a fashion so brutal and offensive to human dignity as to shock the conscience." *Id.* at 701 (internal citations omitted).  "To state a claim under section 1983 based on a Fourteenth Amendment due process violation, [a plaintiff] must allege a liberty deprivation and a lack of due process." *McRorie v. Shimoda*, 795 F.2d 780, 785 (9th Cir. 1986).

First, as outlined above, Plaintiff has no right to the medication of his choice.  Plaintiff has a right to receive adequate medical care, but has no right to supplemental care or the care of his choosing. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) (holding that a prisoner has no constitutional right to supplemental or outside care, beyond the care required under the Eighth Amendment).  It is possible, however, for "a state to create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985) (citing *Hewitt v. Helms*, 459 U.S. 460, 470-71 (1983).)  "To establish a protected interest, a prisoner must show 'that particularized standards or criteria guide the State's decisionmakers.'"

*Baumann*, 754 F.2d at 844 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  Similarly, published prison regulations may create a protected interest.  *Olim*, 461 U.S. at 249-250.

The Narcotic Pain Management Contract does not create such an interest because it does not purport to limit Defendants' discretion in prescribing narcotic medication.  Rather, it limits Plaintiff's conduct as a condition for receiving narcotic medication.  (ECF No. 1, Ex. G; ECF No. 22-5 at 112-113.)  Specifically, it advises Plaintiff that his narcotic medication "is being started on a trial basis."  (ECF No. 22-5 at 113.)  Plaintiff is also cautioned in the Contract that he is subject to urine drug screens and his medications may be terminated if his prescribed medication is not found in the correct amount in his system.  (*Id.* at ¶ 15(b).)  Nothing in the Contract guarantees Plaintiff the right to narcotic medication or states that his medication may only be discontinued after a hearing on the matter.  (*Id.*)  Accordingly, Plaintiff does not have a property right in narcotic pain medication.  *Olim*, 461 U.S. at 249-250.  Plaintiff has a right to adequate medical care, but as outlined above, Plaintiff was receiving adequate medical care even after his morphine was discontinued.

Second, Plaintiff did not have the right to a hearing during his administrative appeal process.  In general, there is no constitutional right to a prison administrative appeal or grievance system.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Further, the evidence shows that the Defendants acted in accordance with the Pain Management Contract when they discontinued Plaintiff's morphine.  Plaintiff's contract specifically provides that his morphine will be discontinued if morphine is not found in the correct amount in his system.  (*Id.*)  Laboratory testing of Plaintiff's blood and urine showed that Plaintiff did

not have hydromorphone in his system.  It was the opinion of Dr. Chau, Dr. Walker, and the medical professionals on the Pain Management Committee that the absence of hydromorphone showed Plaintiff was not compliant with his medication.  (ECF No. 22-5 at 100.)  The decision to terminate Plaintiff's morphine was the reasoned decision of a panel of medical professionals.  (*Id.*)  Thus, the decision to remove Plaintiff from his medication was well supported.  Plaintiff's contention that he was never caught selling the morphine is not relevant.

Plaintiff was also given the opportunity to be heard regarded the discontinuation of his morphine.  He filed a 602 Appeal and was interviewed by Dr. Chau on July 16, 2012.  (ECF No. 22-5 at 47.)  He was interviewed again on August 10, 2012, with regard to his second 602 Appeal.  (*Id.* at 39.)  There is no requirement that Plaintiff be afforded an in-person hearing on the matter or that the evidence conclusively demonstrate that Plaintiff was selling or trading morphine.  *Thompson*, 111 F.3d at 701.  So long as Defendants did not act in a manner that "shocked the conscious," there is no due process violation.  *Id.*  Plaintiff has described no such conduct.  Accordingly, his claim fails as a matter of law and the Court **RECOMMENDS** that Defendants' Motion be **GRANTED** as to Plaintiff' due process claim.

### 3.   Qualified Immunity

Defendants also assert the affirmative defense of qualified immunity.  Qualified immunity entitles government officials to "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  Generally, qualified immunity doctrine must "'give [] ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Analysis of qualified immunity begins with the two-step sequence of analysis set forth by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001).  Initially, a court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated constitutional right. *Id*. at 201 (instructing federal courts not to assume the existence of a constitutional right even if it is clear that the defendants would be entitled to qualified immunity).  If the answer to that question is no, then the case must be dismissed as there is no valid cause of action.  *Vance v. Barrett*, 345 F.3d 1083, 1088 (9th Cir. 2003).  On the other hand, if a violation could be made out, the next step is to ask whether the constitutional right was clearly established and, if so, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Saucier* 533 U.S. at 202;  *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (*en banc*) (explaining that "we must ask first whether the facts taken in the light most favorable to the plaintiff would establish a [constitutional] violation....  Only if the answer is in the affirmative should we address the immunity issue."); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (having concluded there was no constitutional violation the court need not reach the issue of qualified immunity).

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity does not protect a defendant when: (1) the defendant's action violated a federal constitutional right; and, (2) the right was clearly established at the time of the conduct at issue. *LSO, Lt. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

Here, as described above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity. *Id.* If they had, however, because the right to medical care is clearly established, Defendants would not be entitled to qualified immunity.

## VI. Conclusion

For the reasons set forth herein, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED.**

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any party may file written objections with the court and serve a copy on all parties by **June 4, 2014.** The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **June 18, 2014.**

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 13, 2014

Hon. Mitchell D. Dembin
U.S. Magistrate Judge